```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

DANNY SHEDD and JACINDA SHEDD,   *

     Plaintiffs,                 *

vs.                              *
                                      CASE NO. 4:11-CV-202 (CDL)
BANK OF AMERICA, N.A.,           *

     Defendant.                  *
```

O R D E R

An Oklahoma state court entered a final judgment against Plaintiffs based upon their default on their mortgage on property located there, authorizing foreclosure on and sale of that property. Notwithstanding that valid state court judgment, Plaintiffs filed the present action in this Court against their lender's successor based on the handling of that loan and the subsequent foreclosure on their property. Because the claims asserted in this federal action are inextricably intertwined with the claims that were finally decided in the Oklahoma state court action, this Court lacks subject matter jurisdiction to hear those claims under the *Rooker-Feldman* doctrine. Accordingly, this action is dismissed for lack of subject matter jurisdiction.

FACTUAL BACKGROUND

Viewed in the light most favorable to the Plaintiffs, the facts are as follows.[1]

In April 2007, Plaintiffs Danny and Jacinda Shedd ("Shedds") executed a mortgage conveying a security interest in their home in Bartlesville, Oklahoma ("the Property") to American Brokers Conduit, which was subsequently assigned to Countrywide Home Loans Servicing, LP ("Countrywide"), which is now Bank of America, N.A. ("BOA") as a result of a merger. Compl. ¶ 7, ECF No. 1. After Mr. Shedd joined the Army in July 2008 and learned that he would be assigned to a post outside the state of Oklahoma, Mrs. Shedd called Countrywide to inquire about programs for active duty military who are required to move to a state other than where their residence is located. *Id.* ¶¶ 9-10. Countrywide informed Mrs. Shedd that if the Shedds submitted Mr. Shedd's active-duty military orders to Countrywide, then, without any additional process or communications with Countrywide, the Shedds would qualify for a ninety day forbearance on their mortgage payments. *Id.* ¶¶ 11-12. Mrs. Shedd then faxed Mr. Shedd's military orders to Countrywide. *Id.* ¶ 13.

---

[1] Because Defendants assert a facial challenge to subject matter jurisdiction, these "facts" are derived from the allegations in the pleadings and their attachments. *See Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1214 n.4 (11th Cir. 2005).

2

The Shedds listed the Property for sale on August 1, 2008 after Mr. Shedd was ordered to report to Fort Benning in Georgia. *Id.* ¶¶ 14-15. The Shedds paid their August 2008 mortgage payment, but they did not pay the mortgage in September, October, or November 2008. *Id.* ¶ 16. Mrs. Shedd contacted Countrywide and informed the company that she and Mr. Shedd had moved out of the Property and gave Countrywide their new Georgia address and their cell phone numbers. *Id.* ¶¶ 17-18.

In November 2008, the Shedds sought to purchase a home in Georgia. *Id.* ¶ 19. Countrywide told the Shedds that they were approved for a mortgage contingent upon renting the Property. *Id.* ¶ 20. In December 2008, Mrs. Shedd attempted to pay the Property mortgage online, but her account was locked. *Id.* ¶ 22.

In preparation for purchasing the home in Georgia, Mr. Shedd pulled his and Mrs. Shedd's credit reports at the end of December 2008. *Id.* ¶ 24. These reports showed that the Shedds' credit scores had dropped and reported a foreclosure status on the Property. *Id.* ¶ 25. After seeing these reports, Mr. Shedd called Countrywide and was informed that the Property was in foreclosure, no military orders had been received, and the Shedds had not been given the ninety day forbearance period that they requested under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. app. § 501 *et seq.* *Id.* ¶¶ 26, 28. Mr. Shedd then mailed another copy of his active-duty military

orders to Countrywide. *Id.* ¶ 27. In January 2009, Countrywide informed Mrs. Shedd that it had not previously received Mr. Shedd's military orders and informed Mr. Shedd it was sorry for the mistake and would correct the past due payments. *Id.* ¶¶ 29-30.

Notwithstanding these communications to the Shedds, Countrywide filed suit on January 13, 2009 against the Shedds in Oklahoma state court, seeking a judgment against them for the amount due on the note and mortgage to the Property and a decree of foreclosure to sell the Property ("Oklahoma lawsuit"). Compl. Ex. 1, Petition 2 & ¶¶ 10-11, *Countrywide Home Loans Servicing, LP v. Shedd*, No. CJ-2009-22 (D. Ct. Washington Cnty., Okla. Jan. 13, 2009) [hereinafter *Countrywide*], ECF No. 1-2 at 2. On January 26, 2009, a process server served the Shedds with summonses in the Oklahoma lawsuit. Compl. ¶¶ 32-33; Compl. Ex. 1, D. Shedd Aff. of Service 1, *Countrywide*, ECF No. 1-2 at 21; Compl. Ex. 1 J. Shedd Aff. of Service 1, *Countrywide*, ECF No. 1-2 at 24.

After being served with the Oklahoma lawsuit, on January 28, 2009 Mr. Shedd again sent Countrywide his military orders. Compl. ¶ 36. Thereafter, a Countrywide representative apologized and told Mr. Shedd that Countrywide was granting the Shedds a modification, so they should disregard the summons, not call back, and wait for a call from a loan modification

4

negotiator. *Id.* ¶¶ 37-38. The Shedds called Countrywide again on March 5, 2009 and were informed that the mortgage was not undergoing a modification and Countrywide would not change any information it had provided to the credit reporting agencies. *Id.* ¶ 39. Later in March 2009, the Shedds requested a loan modification and Countrywide instructed them that the loan was under review for modification and to not call back. *Id.* ¶¶ 40-41.

On March 12, 2009, Countrywide filed an Affidavit as to Military Service in the Oklahoma lawsuit, stating that "Plaintiff is unable to determine with certainty whether any of the Defendants . . . are presently engaged in the military service of the United States, as provided by the Servicemembers Civil Relief Act of 2003." Compl. Ex. 1, Aff. as to Military Serv., *Countrywide*, ECF No. 1-2 at 25. On March 31, 2009, the Oklahoma state court ("Oklahoma court") entered a Journal Entry of Judgment, finding the Shedds in default because the Summons was properly served on the Shedds and they failed to answer or appear in the matter. Compl. Ex. 1, Journal Entry of J. 1, *Countrywide*, ECF No. 1-2 at 26. The Oklahoma court further found that the Shedds defaulted on the note and mortgage owed to Countrywide, and the Court entered judgment against the Shedds in the sum of $128,849.36 plus interest, expenses, late charges, attorney's fees, and other costs. *Id.* at 2. The Court also

authorized the foreclosure on the property and ordered judicial sale of the property.  *Id.* at 3; Compl. Ex. 1, Special Execution & Order of Sale, *Countrywide*, ECF No. 1-2 at 30.

In April 2009, the Shedds received the Journal Entry of Judgment in the mail at their Georgia address.  Compl. ¶ 42. The Shedds called Countrywide and learned that Countrywide was not processing a modification and the Property would be sold May 18, 2009.  *Id.* ¶ 43; Compl. Ex. 1, Notice of Sheriff's Sale, *Countrywide*, ECF No. 1-2 at 43; Compl. Ex. 1, Aff. of Publ'n, *Countrywide*, ECF No. 1-2 at 48.  The Shedds called Countrywide several more times asking for a modification, and Countrywide instructed them to submit specified documentation for a modification.  Compl. ¶ 44.  The Shedds submitted the documents, and Countrywide told them the modification was under review and not to call back.  *Id.* ¶¶ 45-47.

In July 2009, Countrywide told the Shedds that the Property would not be sold at foreclosure if they paid all back payments, loan fees, and legal fees.  *Id.* ¶ 48.  On July 6, 2009, the attorneys for Bank of America, N.A. ("BOA"), which had merged with Countrywide, requested that the Sheriff's Sale be cancelled and the sale was cancelled.  *Id.* ¶ 7; Compl. Ex. 1, Alias Sheriff's Return, *Countrywide*, ECF No. 1-2 at 51.  The sheriff subsequently ordered a sale of the Property at the appraised

value.  Compl. Ex. 1, Second Alias Special Execution & Order of Sale 1, ECF No. 1-2 at 55.

Before the Property was sold, the Shedds received loan modification papers from Countrywide in December 2009, which they signed and sent back to Countrywide.  Compl. ¶¶ 50-52. Nevertheless, in February 2010, Countrywide disavowed knowledge of a loan modification and told the Shedds the Property was in foreclosure.  *Id.* ¶¶ 54-55.  The Property was eventually sold at auction on June 28, 2010 for less than the amount of the judgment, while Mr. Shedd was in Iraq.  *Id.* ¶¶ 59, 66-67.  The Oklahoma court approved the sale on July 19, 2010. Compl. Ex. 1, Order Confirming Sale, *Countrywide*, ECF No. 1-2 at 76.  The Oklahoma judgment and the orders related to the foreclosure have not been vacated.

In May 2011, a Judge Advocate General's Corps officer wrote to BOA in an attempt to correct the adverse entries on the Shedds' credit reports relating to the default judgment and foreclosure on their property.  Compl. Ex. 2, Letter from M. Lane to BOA (May 2, 2011), ECF No. 1-3.  The officer notified BOA that it foreclosed on Mr. Shedd in violation of the Servicemembers Civil Relief Act.  *Id.*  BOA acknowledged receipt of that letter, Compl. Ex. 3, Letter from BOA to J. Shedd (May 17, 2011), ECF No. 1-4, but never responded, Compl. ¶ 73.  The Shedds' credit reports still show the adverse entries. *Id.* ¶ 76.

The Shedds seek to hold Defendant BOA liable as follows: under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. app. § 501 *et seq.*, for foreclosing on their Oklahoma property while Mr. Shedd was an active duty member of the Army; for fraud by BOA agents leading to the default and foreclosure; for violating the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.* ("RESPA"); for wrongful foreclosure; and, for defamation in reporting the foreclosure to credit bureaus.

## DISCUSSION

BOA seeks to dismiss the Shedds' Complaint on the ground that the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine and alternatively seeks to dismiss the Shedds' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] BOA argues that the Shedds' claims are barred by *Rooker-Feldman* because they are inextricably intertwined with the claims and issues decided in the Oklahoma action, and the Shedds had a reasonable opportunity to participate in the Oklahoma action as the defendants in that action. The Shedds acknowledge that *Rooker-Feldman* may apply, but, rather than dismiss the action, they request that the Court stay the action while they seek to set aside the Oklahoma state court judgment.

---

[2] *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923).

8

**I.   Subject Matter Jurisdiction Under *Rooker-Feldman***

Under the *Rooker-Feldman* doctrine, "'a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the United States Supreme Court].'" *Narey v. Dean*, 32 F.3d 1521, 1524 (11th Cir. 1994) (alteration in original) (quoting *Feldman*, 460 U.S. at 482). This doctrine "'is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Alvarez v. Att'y Gen. for Fla.*, No. 11-10699, 2012 WL 1579489, at *5 (11th Cir. May 8, 2012) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)).

The Eleventh Circuit has explained that the "doctrine operates as a bar to federal court jurisdiction where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Id.* (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam)). "The *Rooker-Feldman* doctrine is broad enough to bar all federal claims which were, or should have been, central to

9

the state court decision, even if those claims seek a form of relief that might not have been available from the state court." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001). When a federal court determines that it lacks subject matter jurisdiction under *Rooker-Feldman*, the court must dismiss the case. *Id.* at 1331 n.6.

Applying these principles, the Court finds that the Shedds' claims are inextricably intertwined with those in the Oklahoma action because they are premised on the Oklahoma court having ruled erroneously. *Id.* at 1334. The Shedds assert that BOA wrongfully foreclosed on the Shedds' Property, foreclosed in violation of the SCRA, foreclosed in violation of RESPA, and foreclosed based on fraud. Compl. ¶¶ 79, 81-83. Deciding any of these claims or issues would effectively nullify the Oklahoma court's orders and judgment, which authorized foreclosure on the Property, ordered the Property sold, and confirmed the sale of the Property.

The Shedds also assert that BOA is liable for defamation because it reported false information to credit bureaus, specifically that the Property was in foreclosure and foreclosed on. *Id.* ¶¶ 25, 72, 76, 80. A fundamental element of the Shedds' state law defamation claim is a finding that the Oklahoma foreclosure was unauthorized under the law. For this Court to make that determination, it would necessarily be

required to review, and potentially invalidate, the Oklahoma state court judgment and foreclosure orders, which it is not permitted to do under *Rooker-Feldman*.  See *Alvarez*, 2012 WL 1579489, at *5.

For *Rooker-Feldman* purposes and based on the present record before this Court, the Court also finds that the Shedds had a reasonable opportunity to participate in the Oklahoma action as defendants in that action.  See *Goodman*, 259 F.3d at 1334.  This finding, however, should not preclude them from seeking to vacate the Oklahoma judgment and related orders under Oklahoma law in an Oklahoma state court.

For these reasons, *Rooker-Feldman* applies and the Court does not have subject matter jurisdiction over the Shedds' claims.  See *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 892-93 (11th Cir. 2008) (per curiam) (affirming that the district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine to hear plaintiffs' federal claims challenging the foreclosure action and judgment in a Florida court).  Because the Court lacks subject matter jurisdiction over all of the Shedds' claims, the Court must dismiss this action.  Fed. R. Civ. P. 12(h)(3); *Goodman*, 259 F.3d at 1331 n.6.

**II.   The Shedds' Request for Stay**

The Shedds request that if the Court concludes it does not have subject matter jurisdiction under *Rooker-Feldman,* then it should "stay these proceedings prior to ruling on Defendant's motion to dismiss, because Plaintiffs are filing a Petition to Set Aside Judgment in the Washington County District Court in Oklahoma based on Defendant's violations of the Servicemembers Civil Relief Act."  Pls.' Resp. 1-2, ECF No. 7.  This request misunderstands the nature of subject matter jurisdiction.  If the Court lacks subject matter jurisdiction, it has no power to issue a stay.  It must dismiss the action.  *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[W]ithout jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (internal quotation marks omitted).  Because the Court has no authority to rule upon the motion to stay, it is moot in light of the dismissal.

CONCLUSION

For the foregoing reasons, the Court grants BOA's Motion to Dismiss (ECF No. 5) for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine.  Accordingly, this action

12

is dismissed without prejudice to Plaintiffs' right to re-file the action should the circumstances warrant doing so after the completion of the proceedings in Oklahoma to vacate the relevant judgment and related orders there.

    IT IS SO ORDERED, this 22nd day of June, 2012.

                                         S/Clay D. Land
                                             CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE